UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

JOSEPH HAN and TONY CHANG, on behalf of themselves and others similarly situated,

                             Plaintiffs,

      -against-

STERLING NATIONAL MORTGAGE COMPANY, INC., JONATHAN GOLDBERG, ADAM DEJAK and MICHAEL BIZENOV,

                            Defendants.

-------------------------------------------------------------x

*VIA ECF*

Civil Action No.: CV 09-5589

Bianco, Jr.
Tomlinson, M.J.

### DEFENDANTS' STATEMENT OF UNCONTESTED FACTS PURSUANT TO RULE 56.1 OF THE LOCAL CIVIL RULES OF THE U.S. DISTRICT COURTS FOR THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK

JACKSON LEWIS LLP
*ATTORNEYS FOR DEFENDANTS*
58 South Service Road, Suite 410
Melville, New York 11747

Attorneys of Record:
Paul J. Siegel, Esq.
Wendy J. Mellk, Esq.
Ana C. Shields, Esq.

Defendants, by their attorneys, Jackson Lewis LLP, submit the following Statement of Uncontested Facts in Support of Defendants' Motion for Partial Summary Judgment pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York.

## I. BACKGROUND.[1]

### A. Brief Procedural History.

1. On December 22, 2009, Plaintiffs filed a Complaint alleging Defendants failed to pay Plaintiffs and other similarly situated "loan processors" minimum wage and overtime in accordance with the Fair Labor Standards Act, as amended, 29 U.S.C. §201 *et seq.* ("FLSA") and failed to pay minimum wage, overtime and a spread of hours premium in violation of the New York Labor Law ("NYLL"). See Exhibit 1 (Complaint).[2]

2. On February 25, 2010, Plaintiffs filed an Amended Complaint altering Plaintiffs' title to "loan officer." Otherwise, the allegations are the same as those in the Complaint. See Ex. 2 (Amended Complaint).

3. On March 10, 2010, Defendants filed an Answer to the Amended Complaint, denying all material allegations and asserting several affirmative defenses, including, but not limited to, the defenses set forth in 29 U.S.C. §§259 and 260. See Ex. 3 (Answer to Amended Complaint).

4. By Order, dated November 30, 2010, Your Honor granted Plaintiffs' application for conditional certification of a collective action. See Ex. 4 (Order, Nov. 30, 2010).

---

[1] Defendants accept as true Plaintiffs' allegations solely for purposes of this motion and reserve the right to controvert such allegations in any further proceeding in this matter.

[2] All exhibits (hereinafter "Ex. _") are attached to the Affirmation of Wendy J. Mellk, Esq. (hereinafter "Mellk Aff.").

At oral argument, Your Honor ruled that outside loan officers and team leaders were not similarly situated to inside loan officers, and denied Plaintiff Han and Chang's application to send notice of the FLSA collective action to individuals in those positions. See Mellk Aff. at ¶5.

5. Issuance of notice of pendency of the FLSA collective action was stayed pending ruling upon Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure, Rule 23. Id. at ¶5.

6. By Order, dated March 11, 2011, Your Honor established a briefing schedule for both parties' cross-applications to move for partial summary judgment.[3] See Ex. 5 (Order, Mar. 11, 2011).

### B. Overview Of Defendant Sterling.

7. Sterling provides to borrowers a full range of mortgage options. See Ex. 6 (Affidavit of Neal Krumper dated May 13, 2010 ¶ 5, hereinafter "Krumper Aff., May 13, 2010").

8. Sterling employs, inter alia, inside loan officers. Id. at ¶¶ 11-13.

#### i. Inside Loan Officers - Job Duties

9. Inside loan officers' primary job duties include collecting and analyzing information regarding the customer's income; assets; investments or debts; determining which financial product best meets each particular customer's needs and financial circumstances; and, advising each customer of the advantages and disadvantages of different financial products. See Ex. 7 (Affidavit of Mindy Stern, hereinafter "Stern Aff.," Ex. C); Ex. 8 (Affidavit of Adam Dejak, hereinafter "Dejak Aff." ¶¶ 3-9); Ex. 9 (Deposition of Tony Chang, hereinafter "Chang Tr." at 157 through 169; 176 to 180); Ex. 10 (Affidavit of Eric Garcia, hereinafter "Garcia Aff."

---

[3] As directed by the Court during the March 10, 2011 teleconference, discovery was stayed pending the outcome of the summary judgment motions. See Mellk Aff. ¶6.

2

¶¶ 6-9); Ex. 11 (Affidavit of Justin Greenberg, hereinafter "Greenberg Aff." ¶¶ 6-9); Ex. 12 (Affidavit of Joseph Dlabola, hereinafter "Dlabola Aff." ¶¶ 6-9); Ex. 13 (Affidavit of Brian Bates, hereinafter "Bates Aff." ¶¶ 6-8); Ex. 14 (Affidavit of James Lacey, hereinafter "Lacey Aff." ¶¶ 6-8, 16).

### ii.   The Compensation Plan: Inside Loan Officers' Salary Basis/Guaranteed Draw

10.   From July 27, 2007 through May 2010, Sterling paid inside loan officers a predetermined guaranteed draw of $550 per week that was not subject to reduction due to quality or quantity of work. E.g., Ex. 7 (Stern Aff, Ex. C (Compensation Agreement, ¶2(B) ("under no circumstances shall [inside loan officer] receive less than the gross amount of $1,100 per pay period")); Ex. 9 (Chang Tr. 91); Ex. 11 (Greenberg Aff. ¶12); Ex. 12 (Dlabola Aff. ¶ 10); Ex. 13 (Bates Aff. ¶ 10); and 14 (Lacey Aff. ¶ 10).

11.   Under the guaranteed draw compensation system, commissions were not payable until they exceeded draw amounts already paid to the inside loan officer. In effect, commissions were offset by the guaranteed draw balance. If an inside loan officer separated from employment, he or she had no obligation to repay the draw balance. No one ever made repayment of a negative draw balance. See Id.; Ex.6 (Krumper Aff., May 13, 2010, ¶ 9); Ex. 7 (Stern Aff. ¶¶ 2-5).

12.   Inside loan officers received a guaranteed draw of $550 per week since July 27, 2007 and therefore earned more than the minimum wage for all hours worked plus an additional hour at (more than) the minimum wage for each work day that exceeded 10 hours. E.g., Ex. 7 (Stern Aff, Ex. C (Compensation Agreement, ¶2(B) ("under no circumstances shall [inside loan officer] receive less than the gross amount of $1,100 per pay period")); Ex. 9

3

(Chang Tr. 91); Ex. 11 (Greenberg Aff. ¶12); Ex. 12 (Dlabola Aff. ¶ 10); Ex. 13 (Bates Aff. ¶ 10); and 14 (Lacey Aff. ¶ 10); Ex.6 (Krumper Aff., May 13, 2010, ¶ 9); Ex. 7 (Stern Aff. ¶¶ 2-5).

### iii. 2010 Reclassification Of Inside Loan Officers

13. In April 2010, the Department of Labor issued an Administrative Interpretation withdrawing its September 2006 Opinion Letter, reversing its position, to announce it no longer considered inside loan officers to be exempt pursuant to the administrative exemption set forth in the FLSA. Compare Appendix A (September 8, 2006) with Appendix C (March 24, 2010). To ensure compliance with the DOL's new interpretative position, in May 2010, Sterling reclassified inside loan officers as non-exempt, restructured their compensation, and began paying inside loan officers a regular hourly rate (at or above minimum wage) for all hours worked in a workweek. Inside loan officers also receive overtime pay (at a rate of 1 ½ times the regular hourly rate) for all hours worked in a workweek in excess of 40. Commissions are included in the overtime rate. Inside loan officers employed by Sterling from May 2010 to the present are compensated pursuant to this compensation plan. See Ex. 15 (Affidavit of Neal Krumper, dated March 3, 2011).[4]

### C.   Plaintiff Joseph Han's Employment At Sterling.

13. Joseph Han (hereinafter "Han") was employed, from January 29, 2008 through August 27, 2009, as an inside loan officer at Sterling's Great Neck branch. See Ex. 7 (Stern Aff. ¶ 8).

---

[4]   Under this present compensation scheme, the spread of hours claim is subject to drastic limitation, to wit, no claim is available, because inside loan officers earned more than the minimum wage for all hours worked plus an additional hour at (more than) the minimum wage for each workday that exceeded 10 hours.

14. In conjunction with his employment, Han signed an "Inside Loan Officer Compensation Agreement" which described, <u>inter alia</u>, Han's job duties and compensation arrangement. <u>Id.</u>, Ex. C (Compensation Agreement).

15. Sterling began providing inside loan officers with this Agreement in or about August 2008. Ex. 7 (Stern Aff. at ¶ 7).

16. Han's Compensation Agreement describes inside loan officer job duties as follows:

> An inside loan officer works with customers, and prospective customers, of [Sterling] using his/her judgment, analytical skills and experience to research, select and recommend appropriate loan products based on individualized financial circumstances.

<u>Id</u>. Ex. C (emphasis added).

17. Han's Compensation Agreement also describes the manner in which Han, and other inside loan officers, were compensated,[5] to wit:

> Under no circumstances shall ILO receive less than the gross amount of $1,100.00 per pay period, less applicable and legally required withholdings and contributions for elected benefit programs.

<u>See</u> Ex. 7 (Stern Aff. at ¶2(B) and Ex. D)(Han's Payroll Records).

18. The Compensation Agreement establishes that 1) an inside loan officer's draw is a guaranteed payment; and, 2) commissions are paid when exceeding the guaranteed draw. Since the draw is guaranteed, "[u]pon separation from employment, any open outstanding draw amount…shall be forgiven and [Han] shall have no obligation to repay such open balance." <u>Id</u>. at Ex. C).

---

[5] The Compensation Agreement describes how all inside loan officers were compensated during the Plaintiffs Han and Chang's employment with Sterling, regardless of whether an inside loan officer signed this Agreement. <u>See</u> Ex. 14 (Stern Aff., ¶ 5).

5

19. Throughout his employment, Han earned at least $1,100 per bi-weekly pay period (less applicable withholdings), i.e., he unconditionally received $550 per week. Id. at. Ex. C, Ex. D (Payroll Records). This amount never was reduced nor were deductions (other than lawful withholdings) made. Id.

### D. **Plaintiff Tony Chang's Employment At Sterling.**

20. Tony Chang (hereainfter "Chang") was employed by Sterling as an inside loan officer from June 2007 through October 2008 at Sterling's Great Neck branch. Ex. 7 (Stern Aff. ¶ 9).

21. Like Han and other inside loan officers, Chang was expected to use his discretion and independent judgment, analytical skills and experience to research, select and recommend appropriate loan products based on customers' individual financial circumstances. Ex. 8 (Dejak Aff. ¶¶ 3-9); Ex. 9 (Chang Tr. at 157 through 169; 176 to 180). At his deposition, Chang testified that he performed his job as an inside loan officer using discretion and independent judgment, analytical skills and experience to research, select and recommend appropriate loan products based on consumers' individual financial circumstances. Ex. 9 (Chang Tr. At 157 through 169; 176 to 180).

22. At his deposition, Chang testified, inter alia, as follows:

> Q.    And how would you decide which loan product gave them the most benefit?
> A.    If the customer wants some cash out and that will be the most beneficial for the customer, then we could refinance, give them a cash out. If he wants to save money on the mortgage, we could finance, save some -- lower the interest rate, save some money on the mortgage payment. If the customer has any debts they are paying, we could refinance the loan, pay out some debts.
> Q.    Okay. So you --
> A.    The customer has a 30-year mortgage, wants a 15-year mortgage, you know. It all depends on the client (Tr. 157-58).

6

\* \* \*

Q. So you would determine what the customer was looking to do, why they wanted to refinance or procure a mortgage; correct?

A. Yes (Tr. 158).

\* \* \*

Q. So you would find out about the prospective borrower's job history; right?

A. Yes.

Q. And you would get information about the borrower's assets; correct?

A. Yes. (Tr. 159).

\* \* \*

Q. Did you get information regarding bankruptcies?

A. Yes.

Q. Whether there were liens on the property or things like that?

A. Yes.

Q. Judgments against them?

A. Yes.

Q. So a full financial history, correct?

A. Yes.

Q. And I think you testified you would make these inquiries so that you could determine, A, why they needed a loan, right, and, B, what loan product would be best for them; correct?

A. Yes… (Tr. 160).

\* \* \*

Q. So you would choose from among the products that Sterling was pushing you to sell, and you would choose from those those products and offer whatever options you felt were appropriate to the borrower --

A. Yes. (Tr. 166).

\* \* \*

Q. So that was your decision to make about what, within the parameters, the leeway, it was your decision which rate to offer the borrower?

A. Yes (Tr. 176-77).

23. Similarly, in its September 2006 Opinion Letter, the USDOL describes loan officer job duties as follows:

> …loan officers work with the employer's customers to assist them in identifying and securing a mortgage loan that is appropriate for their individual financial circumstances and is designed to help them achieve their financial goals…The loan officer will collect and analyze the customer's financial information and assess the customer's financial circumstances to determine whether the customer and the property qualify for a particular loan. This involves inquiries into the customer's income, assets, investments, debt, credit history, prior bankruptcies, judgments, and liens…

See Mellk Aff., Appendix A, USDOL 2006 Opinion Letter at pp.1-2.

24. Chang did not sign a Compensation Agreement, but was compensated in the exact same manner—on a guaranteed draw—as Han and other inside loan officers. Ex. 7 (Stern Aff. ¶¶ 5, 9; Ex. 9 (Chang Tr. 91).

25. At all times during his employment, Chang received a guaranteed weekly amount of $550. Ex. 9 (Chang Tr. 91); Ex. 7 (Stern Aff., Ex. E)(Chang's Payroll Records).

## II. DEFENDANTS' GOOD FAITH EFFORTS.

26. In or around May 2007, Sterling retained counsel, Nancy Schess, Esq., to review the exempt status of Sterling's loan officers pursuant to the FLSA and New York Labor Law. Ex. 7 (Stern Aff. ¶¶ 2-5); Ex. 6 (Krumper Aff. ¶¶ 7-9).

27. In doing so, Sterling reviewed with counsel, among other things, the 2006 USDOL opinion letter on the issue. Id.

28. By e-mail dated May 16, 2007, Ms. Schess wrote to Mindy Stern (Senior Vice President and Director of Human Resources):

> I wanted to touch base on the wage/hour project. We have been working through the various issues discussed.
>
> I attach the two DOL opinion letters that form the basis of the analysis for the inside loan officers and outside loan officers regarding the exempt/non-exempt status. I wanted to give you a

8

> chance to read these documents and then suggest we have a conversation to determine next steps.
>
> [No need to study these. *I am most interested in giving you the chance to familiarize yourself with the DOL's fact specific discussions about the duties of the inside and outside sales officers so that we can compare to Sterling's employees in the same categories.*]

Ex. 7 (Stern Aff., Ex. A)(Email from Schess to Stern, dated May 16, 2007)(emphasis added) (attaching, inter alia, the 2006 USDOL Opinion Letter regarding exempt status of inside loan officers).

29. Further, by e-mail dated June 1, 2007, Ms. Schess wrote to Neal Krumper (Executive Vice President), Michael Bizenov (President), Ms. Stern and Dale Fredston (Executive Vice President, Chief Legal Officer), stating:

> I am attaching for anyone who has not yet seen the DOL opinion letters regarding inside and outside loan officers. These letters will form the basis of our discussion.

Ex. 7 (Stern Aff., Ex. A)(E-mail dated June 1, 2007).

30. Counsel and Sterling's Officers reviewed the job duties of inside loan officers to determine their proper classification. Ex. 7 (Stern Aff. ¶¶ 2-3, Ex. A); Ex. 6 (Krumper Aff. ¶¶ 7-9).

31. Counsel prepared a two-page memorandum seeking information gathering regarding loan officer positions. Ex. 7 (Stern Aff., Ex. A)(E-mail dated June 20, 2007).

32. Counsel also reviewed with Sterling the job descriptions for the inside loan officer position. Ex. 7 (Stern Aff., Ex. A)(E-mail from Stern to Schess, dated May 10, 2007, attaching job descriptions for counsel's review and e-mail from Schess to Stern, dated May 11,

2007, seeking "details of the compensation packages and commission schedules" for Inside Telemarketer/Inside Jr Loan Officer/Inside Loan Officer/Team Leader/Outside Loan Officer).

33. Sterling sought advice of counsel as to whether its inside loan officers were exempt administrative employees under federal and New York law as demonstrated by, inter alia, an e-mail dated June 4, 2007, where Mr. Bizenov inquired of counsel:

> Nancy – I am sending this email to you in your role as our company's attorney on this matter: The documents you sent are from the federal DOL. Does NYS follow this?? The first document about the inside loan officers is encouraging. The second about the outside sales people is also encouraging. I will make sure we set up a time for a phone conference as soon as possible.

Ex. 7(Stern Aff., Ex. A, E-mail from Bizenov to Schess, dated June 4, 2007).

### III. NO OPT-IN NOTICES FILED.

34. No inside loan officer has filed an opt-in form as required by 29 U.S.C. §216(b). See Mellk Aff. ¶5.

35. Plaintiff Han never filed an "opt-in" form in violation of 29 U.S.C. §216(b). See Mellk Aff. §5.

36. Plaintiff Chang never filed an "opt-in" form in violation of 29 U.S.C. §216(b). See Mellk Aff. ¶5.

Based on the foregoing facts and for the reasons set forth in Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment, the relief requested should be granted in its entirety.

Dated: Melville, New York
April 11, 2011

                      Respectfully submitted,

                      JACKSON LEWIS LLP
                      *ATTORNEYS FOR DEFENDANTS*
                      58 South Service Road, Suite 410
                      Melville, New York 11747
                      (631) 247-0404

                      By: _/s/ Wendy J. Mellk_____
                          PAUL J. SIEGEL, ESQ.
                          WENDY J. MELLK, ESQ.
                          ANA C. SHIELDS, ESQ.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2011, <u>DEFENDANTS' STATEMENT OF UNCONTESTED FACTS PURSUANT TO RULE 56.1 OF THE LOCAL CIVIL RULES OF THE U.S. DISTRICT COURTS FOR THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK</u>, was electronically filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Eastern District's Local Rules, and the Eastern District's Rules on Electronic Service, and by serving a copy of said document by depositing same in a pre-paid wrapper, in an official depository under the care and custody of Federal Express designated for overnight delivery, upon the following parties:

C.K. LEE, ESQ.
ROBERT L. KRASELNIK, ESQ.
KRASELNIK & LEE, PLLC
*ATTORNEYS FOR PLAINTIFF*
30 East 39th Street
2nd floor
New York, NY 10016
(212) 465-1188

ANA C. SHIELDS, ESQ.

4834-8548-5321, v. 1