UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 09-CV-5589 (JFB) (AKT)
_____

JOSEPH HAN & TONY CHANG,

Plaintiffs,

VERSUS

STERLING NATIONAL MORTGAGE COMPANY, INC., JONATHAN GOLDBERG, ADAM DEJAK & MICHAEL BIZENOV,

Defendants.

_____

MEMORANDUM AND ORDER
September 14, 2011
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Joseph Han and Tony Chang (hereinafter "plaintiffs") commenced this action on behalf of themselves and others similarly situated on December 22, 2009, seeking unpaid minimum wages and overtime compensation from defendants Sterling National Mortgage Company, Jonathan Goldberg, Adam Dejak and Michael Bizenov (collectively, "defendants"), pursuant to the Fair Labor Standards Act of 1938, as amended, ("FLSA"), 29 U.S.C. § 201, *et seq.*, as well as New York Labor Law ("NYLL").

Plaintiff Joseph Han ("Han" or "plaintiff") has moved, pursuant to Fed. R. Civ. P. 23, to certify a class for violations of the NYLL and for the appointment of class counsel. For the reasons that follow, the motion is granted. However, the scope of such notice shall be limited to only those individuals who are "similarly situated" to the named plaintiff, as set forth in this Memorandum and Order.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. The Complaint

According to the complaint, defendant Sterling National Mortgage Company, Inc. ("Sterling") is a mortgage bank that provides mortgage banking services to consumers in New York State. (Am. Compl. ¶¶ 7, 18.) Its headquarters are located in Great Neck, New York and it has two additional offices in Staten Island, New York and Forest Hills, New York. (*Id.* ¶¶ 7, 18.) Defendant Jonathan Goldberg is the Assistant Vice President of Sterling. (*Id.* ¶ 10.) Defendant Adam Dejak ("Dejak") is the Vice President of Sterling. (*Id.* ¶ 9.) Defendant Michael Bizenov is Chairman or Chief Executive Officer of Sterling. (*Id.* ¶ 8.)

Plaintiff alleges that he regularly worked over ten hours per day, over forty hours per week, and was paid on a salary and commission basis. (*Id.* ¶¶ 22-23, 25.) Plaintiff contends that he was paid below minimum wage in contravention of the FLSA and NYLL. (*Id.* ¶¶ 15, 27.) Plaintiff further claims that defendants had a policy of not paying overtime wages as required under the FLSA and NYLL. (*Id.* ¶ 29.) Finally, plaintiff asserts that defendants had a policy of not paying the "spread of hours" premium for the days he worked over ten hours a day despite being mandated to do so by the NYLL. (*Id.* ¶¶ 31, 54.)

### B. Proposed Representative Plaintiff

Proposed class representative Han was formerly employed as an inside loan officer by defendants from about February 2008 until August 2009 at defendants' office in Great Neck, New York. (*Id.* ¶¶ 18-19; Affirm of Wendy J. Mellk dated Mar. 4, 2011 ("Mellk Affirm.") Ex.2.C (Han's Inside Loan Officer Compensation Agreement ("Compensation Agreement")).) According to Han, he was compensated on a draw against commission basis. (Am. Compl. ¶ 25; Aff. of Joseph Han dated April 13, 2010 ("Han Aff.") ¶ 4;[1] Mellk Affirm. Ex 2.C.) Under this scheme, he received "a draw against commission in the maximum gross amount of $1,100 bi-weekly;" the draw was "recoverable against commissions earned." (Mellk Affirm. Ex. 2.C ¶ 2.) Han waived any right to a jury trial to resolve disputes relating to any of the terms of his Compensation Agreement. (Mellk Affirm. Ex 2.C ¶ 9.)

### C. Procedural History

Plaintiffs Han and Tony Chang commenced this action on December 22, 2009. Plaintiffs filed an amended complaint on February 25, 2010. On November 30, 2010 this Court granted plaintiffs' motion for conditional certification of the FLSA claim as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216(b). (Docket 40.) On January 12, 2011, Han filed a motion to certify a class for violations of the NYLL. Defendants filed their opposition on March 4, 2011. Plaintiff submitted his reply on March 28, 2011. The Court has fully considered the submissions and arguments of the parties.

## II. DISCUSSION

Han seeks certification under Fed. R. Civ. P. 23(a) and (b)(3) of a class (hereinafter "Proposed Class") of inside loan officers "who

---

[1] In his declaration dated January 11, 2011, which was filed in conjunction with his motion to certify a class, Joseph Han reaffirmed and incorporated his affidavit submitted to the Court on April 13, 2010. (Docket 47.) The Court therefore cites to Han's April 13 affidavit.

2

were employed by Sterling National Mortgage Company, Inc. any time between" December 22, 2003 and June 2010. (Decl. of C.K. Lee dated January 12, 2011 ("Lee Decl.") Ex. 1 at 6; Pl.'s Reply at 1.) Defendants object to the Proposed Class, arguing that common issues are not present, that Han's claims are not typical, that Han is an inadequate class representative, that common issues of law or fact do not predominate, and that a class action is not superior to individual litigation in this case.

As set forth below, the Court concludes that, because the requirements of Fed. R. Civ. P. 23(a) and (b)(3) have been met, the motion for class certification and appointment of class counsel is granted.

### A. Applicable Law

Rule 23(a) of the Federal Rules of Civil Procedure sets forth a four-part test for certifying a class: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4).

In seeking class certification, plaintiff must first demonstrate that all of the requirements of Fed. R. Civ. P. 23(a) have been satisfied. *See Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *In re VISA Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001), *overruled in part on other grounds by In re Initial Public Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006); *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999), *overruled in part on other grounds by In re Initial Public Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006); *Weil v. Long Island Sav. Bank, FSB*, 200 F.R.D. 164, 168 (E.D.N.Y. 2001); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 238 (E.D.N.Y. 1998). Second, plaintiff must show that the putative class falls within one of the three categories set forth in Rule 23(b). *In re VISA Check/Mastermoney*, 280 F.3d at 133. Plaintiff here seeks certification under Rule 23(b)(3).

The Second Circuit recently emphasized that the district court must conduct a "rigorous analysis" to determine "that every Rule 23 requirement" is met before certifying a class. *In re Initial Public Offering Sec. Litig.*, 471 F.3d at 33 & n. 3, 41 (citing *Falcon*, 457 U.S. at 160-61). "[T]here is no reason to lessen a district court's obligation to make a determination that every Rule 23 requirement is met before certifying a class just because of some or even full overlap of that requirement with a merits issue." *In re Initial Public Offering Sec. Litig.*, 471 F.3d at 41. Thus, it is not sufficient for plaintiffs to make merely "some showing" that the requirements of Rule 23 have been met. *Id.* at 35-36 (citing and distinguishing *Caridad*, 191 F.3d at 292 and *In re VISA Check/MasterMoney Antitrust Litig.*, 280 F.3d at 134-35). Instead, the following standard applies to class certification motions in this circuit:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been

established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re Initial Public Offering Sec. Litig.*, 471 F.3d at 41. The Court now turns to the Rule 23 analysis in the instant case within the legal framework articulated by the Second Circuit.

### 1. Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability means difficulty or inconvenience of joinder [not] . . . impossibility of joinder," *In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999), and the Second Circuit has observed that "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), *cert. denied*, 515 U.S. 1122 (1995) (citing 1 Newberg on Class Actions § 3.05 (2d ed. 1985)); *see also Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 466 (S.D.N.Y. 2005) ("Numerosity is presumed when a class consists of forty or more members.").

In the instant case, the numerosity requirement is clearly satisfied. Defendants do not contest in their opposition papers that this requirement is met. Indeed, plaintiff alleges that the class would exceed 200 loan officers. (Pl.'s Mot. at 5.) Numerosity, therefore, is easily satisfied.

### 2. Common Questions of Law & Fact

Rule 23 mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ourts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992). Thus, a single common issue of law will satisfy the commonality requirement. *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999). A common issue of law will be found if plaintiffs "identify some unifying thread among the members' claims . . . ." *Id.* A court may find a common issue of law even though there exists "some factual variation among class members' specific grievances . . . ." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d at 240. "The commonality requirement may [thus] be met when individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct.'" *Velez v. Majik Cleaning Serv., Inc.*, 03 Civ. 8698 (SAS), 2005 U.S. Dist. LEXIS 709, at *9 (S.D.N.Y. Jan. 18, 2005) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

4

Plaintiff alleges that all of the Proposed Class members were paid in the same manner based on a "draw" against future commission. (Pl.'s Mot. at 5-6.) Plaintiff also asserts that, as a result, whether or not the Proposed Class was paid a salary in accordance with the NYLL is an issue of law common to all the members. (*Id.*) In addition, plaintiff argues that defendants had a policy of requiring the Proposed Class to work over forty hours a week. (Pl.'s Reply at 2-3.) In opposing certification, defendants assert that the Proposed Class performed their jobs differently so that an individualized inquiry would be necessary to assess whether they were properly considered exempt by defendants from the otherwise applicable NYLL requirements.[2] (Defs.' Opp. at 14-15.) Defendants specifically rely on the administrative exemption to the FLSA, which is equally applicable to the NYLL. *See Ramos v. Baldor Specialty Foods, Inc.*, No. 10 Civ. 6271 (RMB), 2011 WL 2565330, at *5 n. 3 (S.D.N.Y. June 16, 2011). Defendants further contend that the class should be limited to loan officers employed by defendants between July 2007 and April 2010. (Defs.' Opp. at 12-13.) Finally, defendants claim that plaintiff has failed to present any evidence that defendants had a policy of requiring inside loan officers to work over forty hours a week. (*Id.* at 14.) The Court concludes that plaintiff has satisfied the commonality requirement for inside loan officers employed by defendants between December 22, 2003 and June 2010 who were paid on a draw against commission basis.[3]

Defendants do not dispute that whether the Proposed Class is exempt or not from the NYLL's wage requirements is a common issue to the entire class; instead, what defendants really argue is that individualized, rather than common, issues predominate in proving whether the exemption applied. However, commonality is not defeated because some individualized proof may be necessary to assess whether defendants properly deemed the Proposed Class exempt. *See, e.g., Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (concluding that whether or not the exemption applied to the class was a common issue despite defendant's assertion that an individualized inquiry would be necessary); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d at 240 (holding that common issues of law exist even if there exists "some factual variation among class members' specific grievances").

In the instant case, as discussed below, there are clearly common issues of law and fact that satisfy the commonality requirement. First, with respect to common legal issues, the question of whether an exemption applies to the NYLL's wage requirements is a legal issue that is common to the entire class. Moreover, in connection with that issue, defendants rely on a Department of Labor opinion letter, which is an issue that is also common to the entire class.

---

[2] The Court does not address defendants' arguments with respect to team leaders and outside loan officers. (Defs.' Opp. at 11-12.) In his reply, Han conceded that the Proposed Class should be limited to inside loan officers. (Pl.'s Reply at 1.) Consequently, the Court's analysis is specific to inside loan officers.

[3] Plaintiff concedes that loan officers employed after June 2010 should not be part of the class. (Pl.'s Reply at 1.) Thus, the Court does not address defendants' arguments for why loan officers employed after June 2010 should be excluded from the class. (Defs.' Opp. at 12-13.)

5

Second, there are also common elements of proof with regard to the applicability of the exemption. For example, there is a single document that describes the loan officer's position. (Mellk Affirm. Ex 2.F.) This job description indicates that the duties of an inside loan officer include speaking to potential customers, identifying "appropriate loan programs, quot[ing] rates, tak[ing] application[s] via telephone, mail, or in person (at borrowers home, their office or in our office) . . . submit[ting] application[s] to processing and work[ing] with borrower[s] and processing as a liaison . . . [r]eport[ing] to Team Leader[s] and/or Sales Manager[s]" and getting trained. (*Id.* ¶ 3.) Though defendants argue that in fact the job duties for the inside loan officers varied greatly person to person, "this job description is unquestionably probative of those actual duties. Thus, interpreting whether the duties described in this document are consistent with [the exemption] is a relevant question common to all class members."[4] *Damassia*, 250 F.R.D. at 156-57. Similarly, defendants have submitted affidavits regarding the basis for classifying the Proposed Class as exempt (*see, e.g.,* Mellk Affirm. Ex 2 ¶¶ 4-6 (Aff. of Mindy Stern, Senior Vice President and Director of Human Resources)), so that the "appropriate interpretation of this evidence is a question that is common among all class members."[5] *Damassia*, 250 F.R.D. at 157.

Additionally, the Court concludes that there is evidence defendants had a policy requiring inside loan officers—not just Han—to work over forty hours a week. (*See, e.g.,* Mellk. Affirm. Ex. 4 ¶ 19 (Senior Loan Officer Justin Greenberg ("Greenberg") on average worked forty to forty-five hours per week and occasionally fifty hours per week); Ex. 6 ¶ 18 (Senior Loan Officer Brian Bates ("Bates") on average worked forty-five hours per week and occasionally fifty hours per week); Ex. 7 ¶ 17 (Loan Officer Jamey Lacey ("Lacey") on average worked forty to forty-five hours per week and occasionally forty-eight).)

Furthermore, the Court agrees with plaintiff that the alleged injuries of the Proposed Class derive from the same course of conduct based on a draw against commission payment scheme. However, the Proposed Class must be limited to those inside loan officers employed between December 22, 2003 and June 2010 who were paid on a draw against commission basis.[6] Defendants argue that inside loan

---

[4] The Court notes that there are a number of affidavits from inside loan officers describing their job duties in a similar fashion. The Court addresses these affidavits in detail under the predominance analysis below.

[5] Defendants argue that the claims of the Proposed Class are not common for the additional reason that "many" inside loan officers earned over $100,000 so that they would be exempt under the FLSA from overtime payments to the extent they "customarily and regularly"

performed the duties of an administrative employee. (Defs.' Opp. at 14 n. 8.) The Court concludes that commonality (and predominance) is not defeated even if there are "many" such inside loan officers. Ultimately, whether or not these inside loan officers qualify for this exemption will depend on whether or not they performed administrative duties as defined under the FLSA. That is at the crux of the administrative exemption. Common issues predominate for the same reasons discussed *infra* in Section II.A.5.i with respect to the administrative exemption.

[6] Plaintiff conceded that inside loan officers employed by defendants after June 2010 should not be part of the Proposed Class. (Pl.'s Reply at 1.) Defendants argue that the class period should end in April 2010, because they started paying hourly rates to their inside loan officers in May 2010. (Defs.' Opp. at 2, 4-5, 13.) The Court concludes that the cut-off for class membership should be in June 2010. Although defendants state that they

6

officers working prior to July of 2007 do not share any questions of law or fact in common with the rest of the Proposed Class because defendants began to pay a guaranteed draw against commission salary on July 27, 2007. (Defs.' Opp. at 3, 13.) However, defendants do not actually explain how inside loan officers were compensated prior to July 27, 2007.  Furthermore, affidavits from inside loan officers employed by defendants prior to July 2007 suggest that they were also paid a draw against commission.[7]  (*See, e.g.,* Mellk Affirm. Ex. 4 ¶¶ 1, 12 (Greenberg was employed as a Senior Loan Officer since September of 2006 and "until June 2010" he was paid a draw against commission); Ex. 6 ¶¶ 1, 10 (Bates was employed as a Senior Loan Officer since "late 2006" and "until June 2010" he was paid a draw against commission).)

---

changed their compensation scheme in May and began paying inside loan officers an hourly rate including overtime, it is unclear when in May that change took effect.  Previously, inside loan officers were paid on a bi-weekly basis and it is unclear whether some inside loan officers received pay on a draw against commission basis into the month of June.  Therefore, in an abundance of caution, the Court limits the time period to June 2010.

[7] Plaintiff suggests, in the alternative, that even if inside loan officers were not paid on a draw against commission basis prior to July 2007, they should still be part of the Proposed Class. (Pl.'s Reply at 2.)  As indicated *supra*, there is no evidence that inside loan officers working for defendants prior to July 2007 were paid under a scheme other than draw against commission.  To the extent plaintiff wants to include any such individuals in the Proposed Class, the Court denies the request.  Inside loan officers paid under a scheme other than a draw against commission are not similarly situated to plaintiff and other Proposed Class members.

In sum, the Court concludes that there are common issues of law and fact based on the allegations in the Amended Complaint as well as based on affidavits and declarations submitted in connection with this motion. The issue of whether or not the Proposed Class was properly deemed exempt from the NYLL is common to all class members as are some elements of proof essential to that analysis. Furthermore, the compensation scheme and policy to work over forty hours a week is applicable to all Proposed Class members from December 22, 2003 and June 2010. Under these circumstances, the commonality requirement is satisfied.

### 3. Typicality

Plaintiff's claims must be typical of the class. Fed. R. Civ. P. 23(a)(3).  This requirement is satisfied if the plaintiff shows that "the representative plaintiff's claims are based on the same legal theory and arise from the same practice or course of conduct as the other class members."  *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d at 241. "[W]here a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," certification for the class is improper because he or she can no longer act in the best interest of the class.  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).  A primary underlying concern is the "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."  *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 180 (2d Cir. 1990).

In short, the question for the Court, at this stage, is whether "the named plaintiff's claim and the class claims are so inter-related that the interest of the class members will be fairly and adequately protected in their absence."

7

*Caridad*, 191 F.3d at 291 (noting that commonality and typicality "tend to merge"). Based on the allegations in the amended complaint, the claims of the proposed class representative Han are inter-related, and common issues of law and fact exist between the proposed class representative and the rest of the Proposed Class. *See In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d at 241.

Defendants argue that the representative plaintiff's claims are factually distinguishable from the rest of the Proposed Class. In particular, defendants contend that Han was paid under a different scheme from inside loan officers after May 2010 and prior to July 2007.[8] For the reasons discussed *supra*, the Proposed Class should be limited to inside loan officers employed from December 22, 2003 until June 2010 who were paid on a draw against commission basis. *See supra* II.A.2, note 6-7. Han's claims are typical of Proposed Class members during that time period because Han was paid on a draw against commission basis, as were inside loan officers employed by defendants between July 2007 and June 2010. *Id*. As previously noted, there is sufficient evidence to demonstrate that inside loan officers working prior to July 2007 were also paid on this basis. *Id*.

Accordingly, the Court concludes that the class representative's claims are typical of the Proposed Class and this requirement is met. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff."); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000).

### 4. Adequacy of Representation

"The final prerequisite for class certification under Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class." *Harris v. Initial Sec., Inc.*, No. 05 Civ. 3873 (GBD), 2007 U.S. Dist. LEXIS 18397, at *19 (S.D.N.Y. Mar. 7, 2007) (quotation marks omitted). "This requires that the proposed class representative . . . have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Id.* (quotation marks omitted) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "A class representative is a fiduciary to the class and bears a responsibility to comply with discovery requests, to possess a basic knowledge of the facts, and to participate to some minimal degree in the lawsuit 'to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney.'" *In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62, 76 (S.D.N.Y. 1999) (citations omitted).

In determining whether plaintiff can adequately represent the interests of the class, courts are free to consider the honesty and trustworthiness of the class representative. *See Savino v. Computer Credit Inc.,* 173 F.R.D. 346, 353 (E.D.N.Y. 1997). Where the court finds the class representative is not credible, adequacy of representation is absent. *Compare Kline* v. *Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (upholding decision to deny role as class representatives when "testimony on an issue critical to one of their two causes of action was

---

[8] To the extent defendants also argue that Han's claims as an inside loan officer are not typical of those by team leaders and outside loan officers, it is clear that plaintiff conceded the Proposed Class should just be limited to inside loan officers. *See supra* note 2.

8

subject to sharp attack"); *with Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 125 (S.D.N.Y. 2001) (refusing to bar class representatives on grounds of credibility where it was not clear that plaintiffs lied or fabricated testimony).

Finally, the Court must also inquire as to whether plaintiffs' counsel is "qualified, experienced and generally able to conduct the litigation." *Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994).

Defendants do not dispute counsel for plaintiff's ability to conduct the litigation and the Court concludes that counsel is qualified, experienced and able to conduct the litigation. (*See* Lee Decl. (Docket 48).) Defendants do, however, object to the proposed class representative. Defendants contend that Han cannot adequately represent the class because: (1) he has failed to cooperate during discovery; and (2) he waived trial by jury in the Compensation Agreement. (Defs.' Opp. at 16-18.) As set forth below, although defendants challenge whether Han is an adequate class representative, the Court does not find any of the arguments to be persuasive.

Defendants argue that plaintiff refused to appear for a deposition and that plaintiff's discovery responses were grossly deficient. (Defs.' Opp. at 17; Mellk Affirm. Ex. 12 (outlining the deficiencies in the discovery responses).) However, the problems with discovery asserted by defendants in the instant case do not rise to the level of "glaring violations of the discovery rules," as required for Han to be considered an inadequate class representative. *In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 197 (S.D.N.Y. 1985). It is apparent that Han's deposition was scheduled at least at one point, but plaintiff Chang was deposed on the date originally reserved for Han's deposition because defendants canceled Chang's earlier deposition date. (Pl.'s Reply at 4-5, Ex. A-1 & A-2.) Thus, some attempt to schedule Han's deposition was made. Furthermore, it appears that the failure to re-schedule a deposition of Han was a result of a disagreement over the re-production of discovery materials by defendants to plaintiffs in a more accessible format and defendants' unwillingness to schedule the depositions of their witnesses. (Pl.'s Reply at 4.) With respect to allegations of deficient discovery responses, the defendants identified the deficiencies in a letter sent to plaintiffs dated September 23, 2010. (Mellk Affirm. Ex. 12.) However, the parties agreed to suspend discovery at the end of November to pursue settlement discussions (Pl.'s Reply Ex. A-5), which did not lead to the resolution of the case. Discovery resumed in mid-February 2011 (Docket 52), but was once again stayed on March 10, 2011, pending the resolution of the parties' cross-motions for summary judgment. (Docket 59.) Given this time-table and the fact that an attempt to schedule Han's deposition was made, the Court concludes that plaintiff's failure to correct the various alleged deficiencies identified by defendants in their September 23 letter and motion to compel (which has yet to be resolved (Docket 58)), do not rise to the level of "glaring violations" of the discovery process. As a result, the Court cannot conclude that Han is an inadequate class representative because of the discovery disputes. *Cf. Koss v. Wackenhut Corp.*, No. 03 Civ. 7679(SCR), 2009 WL 928087, at *7-8 (S.D.N.Y. Mar. 30, 2009) (concluding that class representatives could not adequately represent class where they "failed to appear at their own depositions, several on more than one occasion" and have "failed to respond to numerous of Defendants' discovery requests" (collecting cases)).

9

Defendants next point to the fact that Han has waived trial by jury in signing his Compensation Agreement. (Defs.' Opp. at 17.) The clause on waiver of jury trial was placed into all compensation agreements for employment commencing after August 2008. (*Id.* at 6.) Defendants argue that, as a result, Han's interests are antagonistic to those of at least a portion of the Proposed Class. (*Id.* at 17.) The Court disagrees. The fact that Han's claims will be decided by the Court if the case proceeds to trial, while other class members will have their claims decided by the jury does not make Han's interest antagonistic to the interest of the jury trial class members, and does not provide a basis to conclude that he cannot fairly and adequately present the interests of all class members.

In sum, the Court finds no grounds exist to find Han cannot adequately represent the Proposed Class.

### 5. Class Certification Under Fed. R. Civ. P. 23(b)(3)

When the prerequisites of Rule 23(a) have been met, a class may be certified if it fits within one of the three categories in Rule 23(b). Fed. R. Civ. P. 23(b). "The requirement of 'rigorous analysis' to ensure 'actual, not presumed conformance' with Rule 23(a) applies with 'equal force to all Rule 23 requirements, including those set forth in Rule 23(b)(3).'" *In re Vivendi Universal, S.A. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (quoting *In re Initial Public Offering Sec. Litig.*, 471 F.3d at 33 & n. 3). Plaintiff contends that the class should be certified under Rule 23(b)(3), which applies when "questions of law or fact common to the members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### i. Predominance of Common Issues of Law and Fact

As a general matter, the "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 136). The Second Circuit has held that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). The predominance inquiry is, therefore, related to the commonality and typicality prongs of Rule 23(a), but it "is a more demanding criterion than the commonality inquiry under Rule 23(a)." *Id.*; *see also* 7A Wright, Miller & Kane, Federal Practice & Procedure: Civil § 1763 (3d ed. 2005) ("[P]redominance obviously is a more stringent standard than that prescribed by Rule 23(a)(2) . . . .").

Defendants argue that individual issues of law and fact predominate, including each Proposed Class member's: (1) actual job duties to determine the applicability of the exemption; and (2) method of compensation and whether it complies with that required by the exemption. (Defs.' Opp. at 19-20.) The Court disagrees and concludes that plaintiff has, in fact, satisfied the predominance requirement.

As the Second Circuit explained, the applicability of an exemption is not "an *inherently* individualized inquiry, such that class treatment will never be appropriate in exemption cases," noting that "district courts in this Circuit have certified classes on state law claims that turn on the question of FLSA exemption for a particular group of employees." *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) (emphasis in original). Although the exemption inquiry involves determining the duties performed by each employee, the "evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria . . . will tend to show that the subsidiary questions involved in resolving exemption will be answerable through evidence generally applicable to the class." *Id.* (citing *Damassia*, 250 F.R.D. at 156-61). Thus, so long as plaintiff can demonstrate that the duties of inside loan officers were largely similar, the predominance inquiry is satisfied in favor of class certification. *See id.* at 549-50 (concluding that plaintiffs failed to demonstrate that proposed class members' duties "do not vary materially"). The fact that, as in this case, defendants had a "blanket exemption policy . . . suggests 'the employer believes some degree of homogeneity exists among the employees,' and is thus in a general way relevant to the inquiry [] [; however,] the existence of a blanket exemption policy, standing alone, is not itself determinative of 'the main concern in the predominance inquiry: the balance between individual and common issues.'" *Id.* at 549.

The Court concludes that the primary job duties of inside loan officers are largely similar for purposes of the exemption determination based on the evidence presented by the parties. The Court finds *Damassia*, which was cited favorably by the *Myers* court, particularly instructive here and finds its analysis persuasive. As in *Damassia*, 250 F.R.D. at 159, there is a "single job description document" that is common to all inside loan officers. (*See* Mellk Affirm. Ex. 2.F; *see supra* section II.A.2.) Furthermore, the job descriptions submitted by various loan officers suggest that their job duties were substantially similar. *See, e.g., Damassia*, 150 F.R.D. at 159-60. For example, Senior Loan Officer Greenberg stated that his job included

> structur[ing] each mortgage loan proposal I make to the particular financial circumstances of each client. To do so, for each such loan, my job require[d] me to gather and analyze information from clients such as employment history, income, assets, investments, debt, liquidity, insurance policies, retirement planning, credit history, prior bankruptcies, judgments and liens, as well as characteristics about the property and similar information, and to recommend loan products that best suit the clients' needs. . . . I question[ed] clients about such individualized factors as the length of time they intend to stay in the property and their tolerance for risk. I may [have] offer[ed] a prospective borrower anywhere from two (2) to six (6) potential loan structures in response to their inquiry.

(Mellk Affirm. Ex. 4 ¶¶ 7-8.) According to Greenberg, he spent time on the phone speaking with potential customers who had

11

expressed some interest in a loan. (*Id.* ¶ 10.) Other inside loan officers described their primary job duties in a similar fashion.[9] (*See, e.g.,* Mellk Affirm. Ex. 3 at 144-164 (Chang testified during his deposition that he made calls responding to customer questions and reaching out to potential leads, and that his job required him to collect information about the customer's financial background and what the customer's end-goals were prior to giving several loan options for the customer to choose from), Ex. 6 ¶¶ 7, 9 (Bates indicated he had to "gather and analyze" essentially the same kind of information as Greenberg and questioned clients about similar "individualized factors" prior to offering them two to five "loan structures"; he would also make calls either responding to questions from potential customers or reaching out to potential customers who had been referred.); Ex. 7 ¶¶ 7, 9 (Lacey provided a very similar description involving analyzing information from clients and making an individualized inquiry into the kind of product they were looking for prior to making several recommendations; he also indicated making calls in response to inquiries as well as based on referrals).) The fact that affidavit testimony of inside loan officers suggests that their primary responsibilities were largely identical is indicative of the predominance of common issues. *See, e.g.,* *Damassia*, 150 F.R.D. at 159-60 ("Nor does the testimony of assistant managers themselves reveal material differences in their responsibilities," concluding that deposition testimony supported "[]continuity in the roles of different assistant managers" among different offices.).

Affidavits from defendant Sterling's management also confirm that inside loan officers had common primary duties. Defendant Dejak, who is the First Vice President at Sterling, confirms that the primary duties of inside loan officers were the same and largely mirrors the descriptions provided by the inside loan officers themselves. (Mellk Affirm. Ex. 9 ¶¶ 3-4 ("Inside loan officers are responsible for responding to, and following up on, customer inquiries, and working with customers to assist them to identify and to secure mortgage loans that best fit their individual needs and ability to pay that loan." Inside loan officers would "collect and analyze information related to that customer's financial background" and "evaluate the customer's purpose in seeking a mortgage." The inside loan officer would then utilize all these factors to "determine which product to offer to the customer, while advising the customer about the risks and benefits of loan alternatives."); *see also id.* Ex. 1 ¶ 6 (affidavit of Neal Krumper, Sterling's Executive Vice President, stating that "inside loan officers' primary job duties include collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial product best meets the customer's needs and financial circumstances; and, advising customers regarding the advantages and disadvantages of different financial products").) Dejak indicated that inside loan officers are regularly trained about the mortgage process and about products being offered by defendants. (*Id.* Ex. 9 ¶ 7.) There

---

[9] Han's Compensation Agreement also includes a description of the duties of an inside loan officer consistent with Greenberg's rendition of his own duties. Specifically, the Compensation Agreement stated the "Inside Loan Officer Description" as working "with customers, and prospective customers . . . using his [] judgment, analytical skills and experience to research, select, and recommend appropriate loan products based on individualized financial circumstances." (Mellk Affirm. Ex. 2.C ¶ 1.)

is no indication that the training process was different from branch to branch.[10]

In sum, though there may be some differences in the job duties of inside loan officers, "there is no evidence that they are of such a magnitude as to cause individual issues to predominate." *Damassia*, 150 F.R.D. at 160 (further noting that where "there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt" (collecting cases).)

Finally, the Court finds meritless defendants' argument that individual issues predominate because the method of compensation among the Proposed Class differs. As noted *supra*, the class period should run from December 22, 2003 until June 2010.[11]  *See supra* Section II.A.2 & 3.

For the reasons stated above, the Court concludes that common issues predominate so that class certification is appropriate.

---

[10] Defendants assert that Han's description of his job duties in the Amended Complaint differs from that given by other inside loan officers, including plaintiff Chang. (Defs.' Opp. at 19-20.) The Court disagrees. As an initial matter, the description of his primary duties in his Compensation Agreement is largely similar to that of other inside officers as stated in their affidavits. As for the Amended Complaint, it states that "[t]he primary duty of loan officers at all the branch locations is to contact prospective leads, assemble documents and verify information for loan closings in accordance with the guidelines provided by Defendants." (Am. Compl. ¶ 24.) Though more concise and less detailed than the descriptions provided by the other inside loan officers, it is nevertheless consistent with them. As noted above, the other inside loan officers also indicated having to contact potential customers and collect various information to determine what the customer is looking for, and is eligible for, all to close on loans.

[11] Defendants argue that the class period should begin to run no earlier than March 2008 because the FLSA limitations period allegedly begins to run at that time for all Proposed Class members with FLSA claims. (Defs.' Opp. at 21.) Defendants rely on the fact that this Court's jurisdiction is derived from the FLSA to argue that this Court should not exercise supplemental jurisdiction over NYLL claims arising prior to March 2008.  (*Id.*)  Defendants also assert that a class period that would begin to run earlier will cause individual, rather than common, issues to predominate. (*Id.*) Defendants are wrong. As an initial matter, the FLSA period for Proposed Class members begins to run three years prior to the commencement of the lawsuit. *See Cano v. Four M Food Corp.*, No. 08-CV-3005 (JFB) (AKT), 2009 WL 5710143, at *8, *10 (E.D.N.Y. Feb. 3, 2009); 29 U.S.C. § 255. Plaintiff requests that the class period commence six years prior to the filing of this suit because the state law NYLL claims, over which the Court may exercise supplemental jurisdiction *see* 28 U.S.C. § 1367, have a six year limitations period. *Cano*, 2009 WL 5710143, at *10 (plaintiffs brought FLSA and NYLL claims). Even though district courts in this Circuit have granted both six and three year periods in similar cases with both FLSA and NYLL claims, this Court finds it prudent and expedient in this case to allow a six-year period to apply, even if some recipients of the notice will have claims that are time-barred under the FLSA. Since there may be a number of employees who have both timely state and FLSA claims (such as named plaintiff Han), and the number of potential plaintiffs is purportedly not very high, it seems logical, efficient, and manageable to compel defendants' production of these names only once, if possible. *See Cano*, 2009 WL 5710143, at *10 (collecting cases).

ii. Superiority of Class Action

Where common questions of law and fact predominate over individual issues, Rule 23 further requires the Court to determine "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether these requirements are met, the Court should consider:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating litigation in a particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(B)(3).

In the instant case, the Proposed Class consists of hundreds of potential class members, most of whom are likely to have suffered a small economic loss if they prevailed on individual claims arising from the dispute that is the subject of this lawsuit. Therefore, "'[f]ew individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail[,]' particularly when many of the putative plaintiffs have suffered economic loss of *de minimis* value." *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 245 F.R.D. 147, 172 (S.D.N.Y. 2007), *rev'd in part on other grounds* 574 F.3d 29 (2d Cir. 2009) (quoting *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 304 (S.D.N.Y. 2003)). Furthermore, a class action will save an enormous amount in litigation costs for all parties and allow them to more efficiently prosecute their claims and defenses. *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2003 WL 22509414, at *4 (S.D.N.Y. Nov. 6, 2003); *In re Deutsche Telekom Ag Sec. Litig.*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002). Lastly, the Court does not believe that this case poses manageability difficulties that justify denying certification. *See In re Vivendi*, 242 F.R.D. at 107 ("The determination of whether a particular action is manageable is 'peculiarly' within the discretion of the district court." (citing *In re VISA Check/MasterMoney Antitrust Litig.*, 280 F.3d at 141)). Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this litigation.[12]

B. Requests Regarding Notice

Plaintiff has requested the "names, last known mailing addresses, positions, and dates of employment" of all Proposed Class members. (Pl.'s Mot. at 2.) Though not clear from his motion papers, plaintiff also appears to be requesting telephone and Social Security numbers of the Proposed Class. (Pl.'s Reply at 6.) Defendants object to providing the Social Security and telephone numbers "due to privacy and solicitation avoidance concerns" as well as to providing dates of employment.

---

[12] To the extent defendants argue that class action is not superior because individual issues will predominate (Defs.' Opp. at 19-20), the Court disagrees for the reasons stated above. *See supra* Section II.A.5.i.

14

(Defs.' Mem. at 23.)[13] The Court concludes that plaintiff's request for Social Security and phone numbers is premature for the same reasons the Court found this same request premature with respect to plaintiffs' motion for class certification under the FLSA. (Docket 40.) Specifically, there is no evidence at this time that plaintiff will have trouble reaching the Proposed Class by sending the class notice to their address via first class mail. *See, e.g., Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 60 (S.D.N.Y. 2009) ("The Court does not see the need to direct the disclosure of social security numbers at this stage. If Plaintiffs find that a large number of notices are returned as undeliverable, the Court can consider the matter at that time."). However, plaintiff may renew his request at a later time.

As for plaintiff's request for dates of employment, defendants do not actually explain why they believe providing this information is inappropriate, nor does plaintiff explain why he needs that information. The Court concludes that the dates of employment are not necessary at this juncture. Defendants are required to provide the names and last known address of all members of the Proposed Class.

### III. CONCLUSION

For the reasons set forth above, plaintiff's motion for class certification is GRANTED. The Court certifies the following Class under Fed. R. Civ. P. 23 (a) and (b)(3):

> All inside loan officers employed by defendants between December 22, 2003 and June 2010 who were paid on a draw against commission basis.

The Court further approves Kraselnik & Lee, PLLC as designated class counsel and Joseph Han as class representative.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 14, 2011
Central Islip, NY

\* \* \*

Plaintiffs are represented by C.K. Lee, Kraselnik & Lee, PLLC, 30 East 39th Street, Second Floor, New York, N.Y. 10016. Defendants are represented by Paul J. Siegel, Wendy J. Mellk, and Ana C. Shield, Jackson Lewis LLP, 58 South Service Road, Suite 410, Melville, New York 11747.

---

[13] Defendants also object to the posting of class notice in a "place where putative plaintiffs are likely to view it." (Defs.' Mem. at 23.) Plaintiff did not make such a request in his papers. In any event, the Court concludes that requiring posting of a notice is premature at this juncture. *See, e.g., Capsolas v. Pasta Resources, Inc.*, No. 10 Civ. 5595 (RJH), 2011 WL 1770827, at \*5 (S.D.N.Y. Mar. 9, 2011) (stating that it is "premature to conclude that mailed notice will prove ineffective" and finding that notice via first class mail was sufficient despite allegations of retaliation against plaintiffs). Plaintiff may, however, request the posting of a notice at a later time should circumstances emerge that he believes require such a measure.